IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUIS DREYFUS COMMODITIES SUISSE, SA**<br><br>    **Plaintiff**<br><br> v.<br><br>**FINANCIAL SOFTWARE SYSTEMS, INC.**<br><br>    **Defendant** | **CIVIL ACTION**<br>**NO. 14-05995** |

**PAPPERT, J.**                                                                                           **FEBRUARY 17, 2015**

## MEMORADUM

    Defendant Financial Software Systems, Inc. ("FSS") has filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 5). For the reasons stated below, the motion is denied.

**Factual and Procedural Background**

    Plaintiff Louis Dreyfus Commodities Suisse, SA ("Dreyfus") seeks recognition and enforcement of a default judgment entered by the High Court of Justice, Queen's Bench Division, Manchester District Registry, Mercantile Court, Manchester, United Kingdom (the "High Court") against FSS. (Compl., Doc. No. 1, ¶ 6).

    The origin of the dispute is a 1996 licensing agreement between Dreyfus and FSS (the "Licensing Agreement"). On July 31, 2012, Dreyfus and FSS executed a second addendum to the Licensing Agreement ("Addendum 2"). *Id.* ¶ 20. Article 4 of Addendum 2 provided:

> This Addendum, the 1996 License Agreement, the 1999 Termination Agreement, the 1999 Maintenance Agreement, and Addendum 1 shall be governed in all respects by the law of England. Any dispute arising from or in connection with this Addendum, the 1996 License Agreement, the 1999 Termination Agreement, the 1999 Maintenance Agreement, and

>    Addendum 1 shall be submitted to exclusive jurisdiction of the competent
>    court in England.

*Id.*, Ex. C, Art. 4

On November 27, 2012, Dreyfus sued FSS in the High Court for breach of the Licensing Agreement. *Id.* ¶ 22. Because FSS is based in the United States – outside of the jurisdiction of the High Court – it was necessary under English procedural rules for Dreyfus to seek permission of the High Court to serve FSS in the United States. *Id.* ¶ 24. Dreyfus sought that permission at the same time it initiated proceedings. *Id.* High Court Judge Hegarty issued an order (the "Hegarty Order") giving Dreyfus permission to serve process on FSS at FSS headquarters in Horsham, Pennsylvania. *Id.* ¶ 26. On December 12, 2012, a process server handed a copy of the originating documents in the High Court action to Vincent Small at FSS headquarters in Horsham. *Id.* ¶ 39; Ex. F. Mr. Small is alleged to be a Vice President, Director, and 25% shareholder of FSS. *Id.*

Under the Hegarty Order, FSS had until 22 days after service to file and serve an Admission, an Acknowledgement of Service, or a Defense. *Id.* ¶¶ 42, 43. FSS did not take any of these steps. *Id.* ¶ 41. Five days after FSS's time to respond expired, Dreyfus filed an application for default judgment with the High Court. *Id.* ¶ 44. In a series of emails exchanged in the days following Dreyfus' application for default judgment, counsel for FSS acknowledged that they were aware of the High Court action, but believed that service was ineffective and that FSS was not obligated to respond to the lawsuit. *Id.* ¶ 46.

On January 9, 2013, the High Court issued a notice directing FSS to appear at a hearing on January 18, 2013 to respond to Dreyfus' request for default judgment. *Id.* ¶ 48. On January 11, 2013, Dreyfus' counsel personally served FSS with the notice of hearing at FSS headquarters in Horsham. *Id.* ¶ 49, Ex. I. On January 18, 2013, the High Court held the hearing on Dreyfus'

request for default judgment. *Id.* ¶ 50. FSS did not appear. *Id.* ¶ 51. The High Court determined that service of process was properly effected under Pennsylvania law and entered judgment against FSS for over $700,000. *Id.* ¶¶ 54, 55, Ex. H.

Dreyfus sought to enforce the High Court judgment in the United States. On February 20, 2013, Dreyfus filed a "Praecipe to File and Index Foreign Judgment" in the Montgomery County Court of Common Pleas (the "Montgomery County Court"). *Id.*, Ex. K. Dreyfus requested that the Montgomery County Court enter judgment in Dreyfus' favor and against FSS pursuant to Pennsylvania's Uniform Enforcement of Foreign Money Judgments Act, 42 Pa.C.S. § 4306 (the "Enforcement Act"). *Id.* The Montgomery County Prothonotary entered judgment against FSS, and Dreyfus filed a Praecipe for Writ of Execution directing the Montgomery County Sheriff to garnish the FSS operating account at National Penn Bank. (Mot. to Dismiss, Doc. No. 5-2, p. 7). The Sheriff served the Writ of Execution, and National Penn Bank garnished the FSS operating account. *Id.*

Two days later, counsel for FSS entered appearances in the Montgomery County Court and simultaneously filed a Petition to Strike Judgment and Vacate Execution. (Compl., Doc. No. 1, ¶ 64). FSS argued that it had not been properly served in the High Court action. *Id.* ¶¶ 65, 66. FSS did not dispute that it had actual notice of the High Court action. *See id.* ¶ 69. On August 30, 2013, the Montgomery County Court granted FSS's Petition to Strike Judgment and Vacate Execution. *Id.* ¶ 88. The Montgomery County Court provided no opinion or analysis in support of its ruling. *Id.* ¶ 89.

Dreyfus filed a timely Notice of Appeal of the Montgomery County Court's ruling with the Pennsylvania Superior Court. *See id.* ¶ 93. Dreyfus raised the following five issues on appeal:

1) Does section 22006(3) of Pennsylvania's Uniform Foreign Money Judgment Recognition Act (the "Recognition Act") bar a party from challenging a judgment issued against it by a court in England for lack of personal jurisdiction, when the party attempting to challenge the judgment agreed to submit to the exclusive jurisdiction of the courts of England in a forum selection clause contained in a valid, binding contract with the party seeking to enforce the judgment?

2) Does the Enforcement Act apply to proceedings in which a party seeks to enforce a judgment issued by a court in England?

3) Does the Enforcement Act require a party to initiate separate, preliminary proceedings for recognition of a foreign-nation judgment before the party is permitted to enforce that judgment?

4) Does the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention") require a party to effect service through the Central Authority of the country of destination?

5) Does personal service, delivered in-hand to the Vice President, Director and Shareholder of a corporation at its corporate headquarters constitute effective service in this case under the Hague Convention and satisfy the requirements of federal and/or state law?

*Louis Dreyfus Commodities Suisse SA v. Fin. Software Sys., Inc.*, 99 A.3d 79, 81 (Pa. Super Ct. 2014).

After the appeal was filed, the Montgomery County Court issued an opinion in support of its earlier order, pursuant to Pennsylvania Rule of Civil Procedure No. 1925(b). *Id.* ¶ 94. The bases for the Montgomery County Court's decision to grant FSS's Petition to Strike Judgment and Vacate Execution were: (1) the Enforcement Act applies only to sister-state judgments, not to foreign judgments; (2) service was ineffective because Dreyfus' use of a private process server did not satisfy the requirements of the Hague Convention or the Pennsylvania Rules of Civil Procedure[1]; and (3) FSS was permitted to challenge the personal jurisdiction of the High Court in the Montgomery County Court because FSS could not appear in the High Court action without waiving its right to contest jurisdiction. *See id.* ¶ 95.

---

[1] Pennsylvania Rule of Civil Procedure No. 400 provides that with certain exceptions, "original process shall be served within the Commonwealth only by the sheriff."

4

On July 29, 2014, the Superior Court affirmed the Montgomery County Court's judgment on "other grounds." *See id.* ¶ 98; *see also Dreyfus*, 99 A.3d at 86. The Superior Court ruled that Dreyfus' Praecipe to File and Index Foreign Judgment under the Enforcement Act was "fatally flawed" because a "party cannot enforce a foreign nation money judgment in Pennsylvania unless that judgment has been recognized as valid pursuant to the [Recognition Act]." *Dreyfus*, 99 A.3d at 80, 86. Therefore, the Superior Court ruled that Dreyfus was required to petition for recognition of the judgment under the Recognition Act before petitioning for enforcement under the Enforcement Act. *See id.* at 86. The Superior Court specified that its holding was "predicated on the defective procedures implicated by [Dreyfus]" and that nothing in its ruling prevented Dreyfus from "prospectively complying with the procedures that we have identified." *Id.* at 86 n.10.

On October 21, 2014, Dreyfus filed this action in federal court. The complaint contains claims for relief under the Recognition Act (Count I) and the Enforcement Act (Count II). Dreyfus contends it filed this action to "remedy the purportedly 'defective' nature of the procedure it followed in the first instance." *Id.* at ¶ 105.

FSS then filed the subject motion to dismiss. FSS makes two principal arguments in support of its motion. *First*, FSS contends that this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine because "Dreyfus is asking that this Court review and reject the state court decision and complains of an injury caused by the state court decision . . . ." (Mot. to Dismiss, p. 13). *Second*, FSS contends that the complaint must be dismissed for failure to state a claim upon which relief can be granted because the High Court judgment "cannot be recognized." *Id.* FSS presents several arguments in support of this proposition, all of which boil

5

down to a contention that the High Court lacked personal jurisdiction over FSS because FSS was not properly served in the High Court action. *See id*. at 13-21.

**Discussion**

    **A.  The *Rooker-Feldman* Doctrine**

FSS moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that the Court lacks jurisdiction over this action pursuant to the *Rooker-Feldman* Doctrine. A 12(b)(1) motion can present either a facial attack or a factual attack on the Court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When considering a facial attack, the Court "must consider the allegations of the complaint as true." *Id.* When considering a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Because FSS's jurisdictional challenge asks the Court to look beyond the allegations in the pleading, it will be treated as a factual challenge to the Court's jurisdiction. *See, e.g.*, *Walthour v. Child & Youth Serv.*, 728 F.Supp.2d 628, 635 (E.D. Pa. 2010) (determining that "[defendants'] arguments relying upon the *Rooker–Feldman* doctrine demonstrate their intent to make a factual challenge to subject-matter jurisdiction.").

In simple terms, the *Rooker-Feldman* Doctrine directs that "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments . . . ." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014). *Rooker-Feldman* is a narrow doctrine that applies only where: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) that judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to

review and reject the state judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great Western*, 615 F.3d at 166.

Here, neither the second nor fourth elements are satisfied. Dreyfus does not complain of injuries caused by the state court judgment. The Superior Court held, "a party cannot enforce a foreign nation money judgment in Pennsylvania unless that judgment has been recognized as valid pursuant to the [Recognition Act]." *Dreyfus*, 99 A.3d at 80. The Superior Court was clear that nothing in its ruling "prevents [Dreyfus] from prospectively complying with the procedures that we have identified." *Id.* at 86 n.10. In this case, Dreyfus seeks recognition and subsequent enforcement of the High Court judgment. This federal action does not complain of injury caused by the Superior Court judgment; it is an attempt at the prospective compliance the Superior Court envisioned. (*See* Compl., ¶ 105).

FSS acknowledges that the Superior Court's decision contemplated subsequent procedures under the Recognition Act. (*See* Mot. to Dismiss, p. 10 (stating that the Superior Court's decision "clearly contemplat[ed] that Louis Dreyfus would return to the Montgomery County Court for additional proceedings.")). Its objection appears to be with Dreyfus' choice of forum in which to pursue recognition of the High Court judgment. FSS does not dispute that Dreyfus has properly invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. It simply contends that by filing suit in this Court, Dreyfus is attempting to "evade and undo the prior decisions of the Montgomery County Court." *Id. Rooker-Feldman* is a narrow doctrine that deprives federal district courts of jurisdiction only under limited circumstances that do not apply here; it will not defeat Dreyfus' choice of forum. *See Williams*, 765 F.3d at 315.

Nor does Dreyfus invite this Court to review and reject the state court judgment. As described above, the Superior Court held only that Dreyfus' Praecipe to File and Index Foreign Judgment was procedurally deficient because it invoked the authority of the Enforcement Act rather than the Recognition Act. The relief requested by Dreyfus in this action – recognition of the High Court judgment pursuant to the Recognition Act with subsequent enforcement under the Enforcement Act – does not require any review of the Superior Court's ruling. Indeed, Dreyfus' request for relief is perfectly consistent with the Superior Court's limited holding, making *Rooker-Feldman* inapplicable. *See FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("[T]o determine whether *Rooker–Feldman* bars [plaintiff's] federal suit requires determining exactly what the state court held. If the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling, then . . . the district court has no subject matter jurisdiction to hear the suit.").

FSS's argument that *Rooker-Feldman* bars review of the judgment of the Montgomery County Court is misplaced. The Montgomery County Court's decision was not the final word in the state court case. Rather, it's decision was appealed within the state court system and affirmed by the Superior Court – albeit on "other grounds." The *Rooker-Feldman* Doctrine does not apply to state trial court decisions that are appealed through the state court system. *See FOCUS*, 75 F.3d at 840 (*Rooker-Feldman* Doctrine applies to "final adjudications" of state court actions). FSS's motion to dismiss based on lack of subject matter jurisdiction under the *Rooker-Feldman* Doctrine is denied.

### B. Failure to State a Claim upon which Relief can be Granted

FSS also argues that the complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the

8

sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. at 679). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

The crux of FSS's argument for dismissal under Rule 12(b)(6) is that "the [High Court] default judgment cannot be recognized pursuant to the Recognition Act because the [High Court] lacked personal jurisdiction over FSS when it issued the default judgment that Louis Dreyfus is asking this Court to recognize and enforce." (Mot. to Dismiss, p. 13). The Recognition Act provides, "Except as provided in sections [22004 and 22005], a foreign judgment meeting the requirements of section [22009] is conclusive between the parties to the extent that it grants or denies recovery of a sum of money." 42 P.S. § 22003. It further provides, "A foreign judgment is not conclusive if . . . the foreign court did not have personal jurisdiction over the defendant . . . ." 42 P.S. § 22005(2). However, "[t]he foreign judgment shall not be refused recognition for lack of personal jurisdiction if . . . the defendant, prior to the commencement of the proceedings, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved . . . ." 42 P.S. § 22006(3).

FSS contends that the High Court lacked personal jurisdiction over FSS because FSS was not properly served with original process. (*See* Mot. to Dismiss, pp. 13-21). Therefore, FSS

argues, the High Court judgment does not meet the requirements of section 22005(2) of the Recognition Act.  Dreyfus counters that FSS had previously agreed to submit to the jurisdiction of the English courts as defined in section 22006(3) of the Recognition Act.  Accordingly, FSS cannot contest the High Court's personal jurisdiction, and all of FSS's arguments regarding insufficient service of process fall away.  (*See* Resp. Br., Doc. No. 7, pp. 9-10).

At this point, the parties' disagreement turns on an interpretation of Article 4 of the Licensing Agreement, which states, "Any dispute arising from or in connection with [the Licensing Agreement] shall be submitted to exclusive jurisdiction of the competent court in England."  (Compl., Ex. C, p. 9).  Dreyfus argues that through this Article, "FSS agreed in advance to submit to the jurisdiction of the courts of England" so as to trigger the bar to contesting lack of personal jurisdiction under 42 P.S. § 22006.  (Resp. Br., p. 9).  FSS, on the other hand, characterizes Article 4 as a "venue clause" and a "forum selection clause" and insists that it never waived the right to contest the jurisdiction of the English courts.  (Mot. to Dismiss, p. 13 n.5; Reply Br., Doc. No. 10, p. 3).

The parties' briefs display a lack of controlling Pennsylvania precedent on both the interaction between section 22006(3) and the service of process requirements and standards for determining what constitutes "submi[ssion] to the jurisdiction of the foreign court" under section 22006(3).  (*See* Resp. Br., p. 10; Reply Br., pp.4-5).  Dreyfus points to two New York Court of Appeals cases that examined contractual language similar to Article 4.  In both cases, the court found that the contractual language amounted to a submission to the jurisdiction of a foreign court so that the defendant could not avoid domestic recognition of the judgment based on lack of proper service.  *See Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 80 (2010); *Landauer Ltd. v. Joe Monani Fish Co., Inc.*, 8 N.Y.3d 1129, 1132 (2014).  FSS, on the other hand, cites a number

10

of cases for the general proposition that under Pennsylvania law, "proper service is a prerequisite to a court acquiring personal jurisdiction over a defendant." (Reply Br., p. 4). None of the cases cited, however, involved an alleged submission to the personal jurisdiction of a foreign court as described in the Recognition Act. And FSS's assertion that this Court is bound under the law of the case doctrine to the findings of the Montgomery County Court in the state court proceedings is incorrect. *See Farnia v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) ("The [law of the case] doctrine only applies within the same case – an identical issue decided in a separate action does not qualify as law of the case.").

While issues of statutory construction and contract interpretation are matters of law to be decided by the Court, those issues are better resolved under the standard for summary judgment than under the standard for a motion to dismiss. *See, e.g.*, *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, --F.Supp.2d--, No. CV 13-1741, 2014 WL 3703867, at *6 D. Del. Jul. 24, 2014) ("Both of these defenses involve contract interpretation by the Court, and therefore are more amenable to a determination at the summary judgment stage."). Given the lack of controlling precedent rejecting Dreyfus' legal theory, the conflicting positions regarding the interpretation of Article 4, and the motion to dismiss standard that demands the complaint be construed in the light most favorable to the plaintiff, the Court finds that the complaint contains enough factual material, accepted as true, to state a plausible claim for relief. *See, e.g.*, *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F.Supp.2d 782, 797 (E.D. Pa. 2011) (contractual ambiguity is sufficient to overcome motion to dismiss); *Branch v. FDIC*, 825 F.Supp. 384, 397 (D. Mass. 1993) ("[C]ourts should generally be reluctant to grant a motion to dismiss when the claim in question asserts a novel theory of recovery."). FSS's motion to dismiss is denied.[2]

---

[2] In its response in opposition to FSS's motion, Dreyfus invites the Court to not only deny FSS's motion to dismiss, but to "enter an order recognizing the conclusiveness of the [High Court] Judgment under the Recognition

An appropriate order follows.

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.

---

Act, and its consequent enforceability under the [Enforcement Act] . . . ." (Resp. Br., p. 3). In effect, Dreyfus asks the Court to deny FSS's motion to dismiss and grant summary judgment in favor of Dreyfus. The Court's only task in deciding FSS's motion to dismiss is to determine whether Dreyfus has pleaded enough facts, accepted as true, to state a plausible claim for relief. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case). The Court will not determine Dreyfus' *entitlement* to relief by way of an opposition to a motion to dismiss.