# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUIS DREYFUS COMMODITIES SUISSE, SA** <br><br> Plaintiff <br><br> v. <br><br> **FINANCIAL SOFTWARE SYSTEMS, INC.** <br><br> Defendant | **CIVIL ACTION** <br> **NO. 14-05995** |

**PAPPERT, J.**                                                                                                       October 9, 2015

## MEMORANDUM

Louis Dreyfus Commodities Suisse, SA ("Dreyfus") is a corporation registered under the laws of Switzerland, which trades largely in physical commodities and financial instruments. (Pl.'s Stmt. of Facts ("Pl.'s SMF") at Ex. C; Def.'s Stmt. of Facts ("Def.'s SMF") at Ex. 1.) Financial Software Systems, Inc. ("FSS") is a corporation registered under the laws of Pennsylvania, which supplies financial risk-management software. (*Id.*) In 1996, Dreyfus and FSS entered into a Spectrum Software License and Maintenance Agreement (the "License Agreement"). (Pl.'s SMF at Ex. A.) In the License Agreement, Dreyfus agreed to install FSS's "Spectrum" risk management system in its Paris office. (*Id.*) FSS granted Dreyfus a perpetual, non-exclusive, non-transferable license to use the system in that location. (*Id.*) In 2012, the two parties sought to update and amend their agreement, and executed the second of two addenda to that contract. (Pl's SMF at Ex. B; Def.'s SMF at Ex. 2.) Specifically, the addenda gave Dreyfus a global licensing agreement that allowed it to use the FSS "Spectrum" system in any of its global offices in exchange for additional licensing fees. (*Id.*) The 2012 addenda also contained a

provision requiring all disputes arising from that agreement to be resolved in an English court. (*Id.*)

After a dispute arose between the two parties, an English court entered default judgment against FSS when it failed to appear. (Pl.'s SMF at Ex. J; Def.'s SMF at Ex. 15.) Dreyfus sought to enforce that judgment and served process on FSS in Pennsylvania. (Pl.'s SMF ¶¶ 41-44; Def.'s SMF ¶¶ 44-45.) In the lawsuit now before the Court, Dreyfus seeks recognition of the default judgment entered in the U.K. Both parties have filed motions for summary judgment. (ECF Nos. 30, 31.) FSS argues that Dreyfus did not properly effect service because Dreyfus used a process server instead of a sheriff as required by Pennsylvania law. (Def.'s Mot. Summ. J. 2, ECF No. 31.) Dreyfus contends that FSS previously agreed by contract to submit to the jurisdiction of English courts, and thus cannot claim that the English courts lack personal jurisdiction. (Pl.'s Mot. Summ. J. 7-11, ECF No. 30.) The issue therefore is whether the English court has personal jurisdiction over FSS, and thus whether Dreyfus can have the judgment recognized and enforced under Pennsylvania law. After a thorough review of the record, and for the reasons stated below, the Court grants Dreyfus's motion and denies the motion filed by FSS.

**I.**

The following facts are undisputed. Dreyfus and FSS are parties to the License Agreement dated October 11, 1996. (Pl.'s SMF at Ex. A.) On July 31, 2012, Dreyfus and FSS executed a second addendum to the License Agreement ("Addendum 2"). (Pl.'s SMF at Ex. B; Def.'s SMF at Ex. 2.) A dispute arose when FFS refused to reimburse Dreyfus $700,000, which Dreyfus claims FSS owed pursuant to Addendum 2. (Pl.'s SMF ¶ 4.) On November 27, 2012, Dreyfus initiated an action against FSS in the High Court for breach of the License Agreement. (Pl.'s SMF at Ex. C; Def.'s SMF at Ex. 1.)

Addendum 4 contains a forum-selection clause governing any disputes arising between the parties:

> This Addendum, the 1996 License Agreement, the 1999 Termination Agreement, the 1999 Maintenance Agreement, and Addendum 1 shall be governed in all respects by the law of England. Any dispute arising from or in connection with this Addendum, the 1996 License Agreement, the 1999 Termination Agreement, the 1999 Maintenance Agreement, and Addendum 1 shall be submitted to exclusive jurisdiction of the competent court in England.

Dreyfus sought permission of the High Court to serve FSS in the United States pursuant to English procedural rules. (Pl.'s SMF at Ex. D; Def.'s SMF at Ex. 4.) High Court Judge Hegarty issued an order (the "Hegarty Order") giving Dreyfus permission to serve process on FSS at FSS headquarters in Horsham, Pennsylvania. (Pl.'s SMF at Ex. D; Def.'s SMF at Ex. 5) The Hegarty Order did not prescribe a particular method of service. (Pl.'s SMF at Ex. D; Def.'s SMF at Ex. 5)

On December 12, 2012, a process server handed a copy of the originating documents in the High Court action to Vincent Small, a Vice President, Director, and shareholder of FSS, at FSS headquarters in Horsham. (Pl.'s SMF at ¶ 15, Ex. E.) FSS had 22 days after service to file and serve an Admission, an Acknowledgement of Service, or a Defense. (Pl.'s SMF at Ex. D.) The Claim Form given to FSS also provided that "[i]f you need longer than 22 days to prepare your defence or to contest the court's jurisdiction to try the claim, complete the Acknowledgement of Service form and send it to the court within 22 days." (*Id.*) FSS did not take any of these steps. (*Id.* at ¶ 28.) Dreyfus filed an application for default judgment with the High Court five days after FSS's time to respond expired. (*Id.* at Ex. F) In an exchange of emails between January 9-11, 2013, FSS counsel acknowledged that they were aware of the High Court action, but did "not believe that the papers FSS ha[d] received were served in accordance with Pennsylvania law." (*Id.*; Def.'s SMF at Ex. 9)

The High Court subsequently issued a notice directing FSS to appear at a hearing on January 18, 2013 to respond to Dreyfus's request for default judgment. (Pl.'s SMF at Ex. F.) On January 11, 2013, Dreyfus's counsel personally served FSS with the notice of hearing at FSS headquarters in Horsham. (*Id.* at Ex. H.) FSS again did not appear at the High Court hearing on Dreyfus's request for default judgment on January 18, 2013. (*Id.* at Ex. I.) At that hearing, the High Court entered judgment against FSS for over $700,000 (the "U.K. Judgment").[1] (*Id.* at Ex. J; Def.'s SMF at Ex. 15.)

On October 21, 2015, Dreyfus filed this suit pursuant to the Uniform Foreign Money Judgment Recognition Act, 42 P.S. §§ 22001, *et seq.* (the "Recognition Act") to gain domestic recognition of the U.K. Judgment.[2] The Court denied FSS's motion to dismiss on February 17, 2015, (ECF No. 16), and the parties were given an opportunity to complete discovery. Dreyfus and FSS both now move for summary judgment.

## II.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in

---

[1] During that hearing, the English High Court concluded that Dreyfus had properly served FSS under Pennsylvania law. (Pl.'s SMF ¶¶ 37-38, at Ex. I; Def.'s SMF ¶ 29, at Ex. 12.) As discussed *infra*, whether service was properly effected under Pennsylvania law is not relevant to the Court's decision since FSS had consented to personal jurisdiction in the English Court through Addendum 4.

[2] The parties litigated in Pennsylvania state court before Dreyfus filed this action. The Court recounted that procedural history when adjudicating FSS's motion to dismiss the case. *See Louis Dreyfus Commodities Suisse, SA v. Financial Software Systems, Inc.*, No. 14-cv-05995, 2015 WL 687801, at *1-3 (E.D. Pa. Feb. 17, 2015). The Court does not recount the state court proceedings here because they are not material to the motions for summary judgment.

support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Liberty Lobby*, 477 U.S. at 252. "When confronted with cross-motions for summary judgment . . . the Court considers each motion separately." *Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 422 (E.D. Pa. 2009).

### III.

The Recognition Act applies to "any foreign judgment that is final and conclusive and enforceable where rendered . . . ." 42 P.S. § 22009. Unless such a judgment meets one of the grounds for nonrecognition, it is "conclusive between the parties to the extent that it grants or denies recovery of a sum of money" and "is enforceable in the same manner as the judgment of another state which is entitled to full faith and credit." 42 P.S. § 22003. There are three conditions under which a court *cannot* recognize a foreign judgment: (1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) the foreign court did not have personal jurisdiction over the defendant; or (3) the foreign court did not have jurisdiction over the subject matter.[3] 42 P.S. § 22005.

Here, the parties focus on the second condition. FSS argues that the U.K. Judgment cannot be recognized as a matter of law because the U.K. Court did not have personal jurisdiction over FSS. They premise this alleged lack of personal jurisdiction on the argument that Dreyfus failed to personally serve FSS in accordance with Pennsylvania law. Dreyfus responds that FSS had previously consented to the U.K. Court's jurisdiction through Article 4 of Addendum 2. It contends that it is entitled to judgment as a matter of law because of a provision in the Recognition Act that specifies a court may not refuse recognition for lack of personal

---

[3] There are also six grounds under which a court, in its discretion, may refuse to recognize a foreign judgment. 42 P.S. § 22004. None of those grounds are applicable here.

5

jurisdiction if "the defendant, prior to the commencement of the proceedings, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved." 42 P.S. § 22006(3).  In response to this argument, FSS agrees that Article 4 is a valid forum selection clause.  Nonetheless, it argues, it is not a waiver of service clause, and under Pennsylvania law, "where there is no valid service, there is no personal jurisdiction." (Def.'s Mot. Summ. J. 4, ECF No. 31.)

The Recognition Act makes clear that a court cannot recognize a foreign judgment if the foreign court did not have personal jurisdiction over the defendant.  It goes on to specify, however, certain ways by which the foreign court can obtain personal jurisdiction that are satisfactory as a matter of law.  One of those ways is through the prior consent of the defendant. 42 P.S. § 22006(3).  Moreover, under Pennsylvania common law, "[j]urisdiction over the person may only be obtained . . . through consent, waiver *or* proper service." *Sleyzynger v. Bischak*, 307 A.2d 405, 406 (Pa. Super. Ct. 1973) (emphasis added).

Article 4 unambiguously shows that FSS consented to personal jurisdiction in the U.K. Court with respect to disputes arising out of the License Agreement and Addenda.  *See, e.g.*, *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 442 (E.D. Pa. 2014) ("[A] defendant may consent to personal jurisdiction and venue through the execution of a valid forum selection clause."). Indeed, FSS does not dispute that Article 4 "is unambiguous insofar as the parties agreed to litigate in the UK . . . ." (Def.'s Mot. Summ. J. 4, ECF No. 31.)  Courts applying Pennsylvania law have interpreted similar forum selection clauses as consenting to the personal jurisdiction of a particular court.  *See, e.g.*, *Gandalf Systems Corp. v. Tri-Tek Information Systems and Services*, No. 91-cv-6278, 1992 WL 172596, at *1 (E.D. Pa. July 13, 1992) (exercising personal jurisdiction based "a forum selection clause that vested jurisdiction and venue" in Pennsylvania);

*see also, e.g.*, *First Union Commercial Corp. v. Medical Management Services*, 47 Pa. D. & C. 4th 382, 389 (Pa. Com. Pl. 2000) ("The court may exercise personal jurisdiction over Sandberg because Sandberg consented in advance to the court's jurisdiction.").

FSS's argument that the U.K. Court lacked personal jurisdiction because service of process was invalid is incorrect. As previously mentioned, under Pennsylvania law, a court can obtain personal jurisdiction "through consent, waiver *or* proper service of process." *Slezynger v. Bischak*, 307 A.2d 405, 406 (Pa. Super. Ct. 1973) (emphasis added); *see also Com. ex rel. Rothman v. Rothman*, 223 A. 2d 919, 922 (Pa. Super. Ct. 1966) ("It is well-settled that a court's jurisdiction over the person may be conferred by consent or agreement."). None of the cases FSS cites in support of its position stands for the proposition that service of original process is a prerequisite to personal jurisdiction where a party has given prior consent to personal jurisdiction.[4]

To the contrary, under Pennsylvania law, where a party has consented or waived any objection to a court's personal jurisdiction, formal service of process is unnecessary. *See Continental Bank v. Brodsky*, 311 A.2d 676, 678 (Pa. Super. Ct. 1973) ("[W]e are of the opinion that the complaint in this case need not be served in the manner authorized by the Pennsylvania Rules of Civil Procedure. Since a defendant may consent to jurisdiction of his person and since he may waive defects in such service, he may certainly consent to the jurisdiction of the court over his person without exacting performance of the usual legal formalities as to service of process."); *Cf. Aamco Automatic Transmissions, Inc. v. Hagenbarth*, 296 F. Supp. 1142, 1143

---

[4] Several of the cases cited by FSS on this point undermine their position. *See McGinley v. Scott*, 164 A.2d 424, 427-28 (Pa. 1960) ("Jurisdiction of the person is *ordinarily* acquired by service upon him of the court's process within the territorial limits of its authority.") (emphasis added); *Kerns v. Joyce*, No. 874 CD 2010, 2010 WL 9519364, at *3 (Pa. Commw. Ct. Dec. 10, 2010 (same); *City of Phila. v. Berman*, 863 A.2d 156, 160 n.8 (Pa. Commw. Ct. 2004) ("Jurisdiction of the person also may be obtained through consent or waiver."); *see also Sleyzynger*, 307 A.2d at 406.

(E.D. Pa. 1968) ("We think that the contractual consent manifested in the franchise agreement is sufficient to vest this court with jurisdiction over the defendant, notwithstanding the fact that service was not perfected in the manner set out in Rule 4."); *In re Eastern Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) ("Since service of process is to provide notice of the pendency of the action, which the excess carriers clearly had, and goes to the question of in personam jurisdiction, in which the excess carriers have clearly acquiesced, the district court's exercise of personal jurisdiction over the excess carriers in the *F&C* action cannot be nullified by Texas Eastern's failure to cause summonses to be served on them.").

## IV.

Dreyfus argues that it is entitled to attorneys' fees due to FSS's "obdurate and vexatious conduct throughout these proceedings." (Pl.'s Mot. Summ. J. 17, ECF No. 30). "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 652, 976 A.2d 474, 482-83 (2009) (citing *Mosaica Charter Sch. v. Commonwealth, Dep't of Educ.*, 813 A.2d 813, 822 (Pa. 2002) (quotations omitted). The Recognition Act does not provide for attorneys' fees, though Pennsylvania statutory law authorizes the award of attorneys' fees "as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter." 42 Pa.C.S.A. § 2503. Courts have interpreted "dilatory" to mean tending to or having the intent to delay and "obdurate" as unyielding or resistant to persuasion. *Martik Bros., Inc. v. Huntington Nat. Bank*, 2010 WL 1664893, at *2 (W.D. Pa. Apr. 23, 2010) (internal citations omitted). "Vexatious" has

been read as causing or creating a source of annoyance or irritation. *Id.* (internal citations omitted).

Though the Court does not find FSS's arguments persuasive, it is unwilling to conclude that FSS, in advancing its arguments through the courts, engaged in dilatory, obdurate or vexatious conduct. *See Boyer v. Hicks*, 19 Pa. D. & C.3d 300, 307 (Pa. Com. Pl. 1981) ("the mere happening of an adverse result does not necessarily brand the loser's position as one of spurious frivolity."); *Martik Bros., Inc.* 2010 WL 1664893, at *2 (disallowing attorneys' fees despite plaintiff's claim that defendant failed to timely produce key documents and failed to offer settlement); *Shapiro v. Am. Home Assurance Co.*, 1985 WL 3033, at *2 (E.D. Pa. Oct. 11, 1985) (disallowing attorneys' fees under § 2503 because "[a]lthough plaintiff's arguments were unpersuasive, neither this court nor the court of appeals dispensed with them in a manner that suggests that they were utterly without foundation"); *Deyo v. St. Luke's Hosp. & Health Network*, 2010 WL 1632904, at *4 (E.D. Pa. Apr. 19, 2010) (same) (disallowing attorneys' fees under § 2503 because the fact that Plaintiff's Whistleblower claim did not survive summary judgment "does not mean that it was unreasonable or litigated in bad faith.").

## V.

FSS unambiguously consented to the personal jurisdiction of the U.K. Court through Article 4, and the U.K. Court action for breach of the License Agreement fell within the scope of that waiver. There is no dispute that FSS had actual notice of the U.K. action and an opportunity to defend itself in that forum. The U.K. Judgment is accordingly a "foreign judgment that is final and conclusive and enforceable where rendered" and no grounds exist by which the Court could refuse recognition of that judgment. Dreyfus is entitled to judgment as a matter of law.

An appropriate order follows.

9

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.